The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning, counsel. This is case number 4-24-1523. And I'm not sure of the pronunciation of the defendant's name, but People v. Bogguess. Counsel, could we have appearances first for the appellant? Edward J. Wittrig on behalf of Ms. Stacey Bogguess. Thank you. And for the appellee? James Ryan Williams for the State. Your Honor. All right. Thank you. Mr. Wittrig, you may proceed with your argument. Justice Harris, may I interrupt for one second, please? We have our emergency siren in the community that is just started now. It's a test every Tuesday morning. And it only lasts about another minute or so. Since I may have questions, or we may, I'd appreciate not being on mute. Would it be okay if we waited just about a minute or two until the siren is finished? All right, that'll be fine. It's doing the same thing in Logan County where I'm located. So, we'll wait until they're finished. And I'll ask the bailiff to not start the clock for Mr. Wittrig until we say so. Thank you. I appreciate it. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Our siren is finished here. All right, Mr. Wittrig, you may proceed. Thank you, your honors. May it please the court, counsel. My name is Edward Wittrig and with the office of the State Appellate Defender, I represent the Petitioner Appellant, Ms. Stacey Bogues on this appeal. Your honors, in this case, even if we accept the testimony of the state's witnesses as true for the purposes of argument one, the state nonetheless failed to prove beyond a reasonable doubt that Ms. Bogues knowingly placed Ms. Ambriz in a reasonable apprehension of receiving a battery. Importantly here, there were no verbal threats to imminently harm Ambriz. There were no physical threat to harm Ambriz. Bogues never reached the area where Ambriz was located to harm her, and Ambriz did not fear being battered by the panels, the plexiglass panels. So I'd like to address each of those in turn, taking the lack of a verbal threat first. There were no verbal threats identified against Ambriz. With respect to that, good morning, counsel. The defendant said, I'll get you? Isn't that a threat? Yes, Your Honor, but the principal did testify, I'll get you. But to understand, it's important to understand the context of when that statement was made. That statement, according to the principal, was made as Bogues was being escorted out of the office. And so at the time that statement is made, the security officer, Bogues, has already intervened and is already guiding her out of the office. And so there's not only the supervisor, there's also the principal and a very large desk between Ms. Bogues and Ms. Ambriz. And so it would not be reasonable from someone in Ms. Ambriz's position to reasonably fear being battered at that point. And I would rely on the decision of people to be tailored for that point. What about the statement, come at me, Rosie? I mean, that was not at that same point, was it? And certainly weren't those words, along with the conduct of knocking that Plexiglas separator down, sufficient to place Ms. Rosie in reasonable apprehension of receiving a battery? No, it wasn't, Your Honor. And taking the come at me first, that was made earlier, you're correct. That was made according to Ambriz's testimony after the Plexiglas panel fell. Bogues took a step back, giving more separation between the two before she started to work her way around the desk. But even then, it doesn't constitute a verbal threat of imminently harming Ambriz or that she's going to strike Ambriz or that she's going to make some sort of physical contact. And at the time that that statement is made, Ambriz hears Bogues, the de facto security officer, coming up behind her and working his way past her to intercede on her behalf and to stop Bogues before she even reaches the area behind the desk. And so knowing that this supervisor is coming out there to stop Ambriz, or excuse me, not Ambriz, Bogues, there would not be a reasonable apprehension of receiving a battery. There's no claim she's trying to get around the school's security officer or try to circumvent him in any way. The evidence suggests that he immediately then guided her out of the office. Now, you also mentioned when you were introducing your argument in council that there was no physical conduct here that would have placed her in reasonable apprehension of receiving a battery. But she testified, or there was testimony, that the Plexiglas panel was knocked down. Is that sufficient? No, that is not sufficient. Sorry, to step back, you're correct that there was testimony that the Plexiglas panel fell, but it was not sufficient to make her reasonably fear receiving a battery. She was very clear that the Plexiglas panel did not harm her when it made contact with her, and so there was no fear of a bodily injury. I'm going to interrupt you, counsel, for a minute. Does there need to be bodily injury? There doesn't, does there? In this case, the state was proceeding, or for an assault, no, there does not have to be bodily injury. But the state was proceeding under the theory that she reasonably feared receiving a bodily injury. And if the Plexiglas panels made contact with her but didn't cause any bodily injury, then she would not have feared further contact from these Plexiglas panels causing injury. One further question on this point. What about defendant's conduct of walking around the desk, the side of Rosie's desk, Ms. Rosie's desk, towards the back? She didn't get all the way to the back, but certainly she started on that path. That certainly was threatening conduct, was it not? No, Your Honor. And I would rely on the case People v. Pember that even if there is an aggressive approach, and I cite that in the opening brief, even if there is an aggressive approach, while someone is using profanities, that's not enough to constitute assault when they're still some distance away from actually reaching the person. There's not an imminent fear of receiving a battery, as decided in that case. And it's really important to understand here that Embree knows that Buggs, the security officer who's right next to her, starts off behind her, but then she hears him moving towards her and then in front of her and intercedes on her behalf so she wouldn't expect Buggess to get around the security officer. In fact, she doesn't. She immediately goes with the security officer out of the building. And the state on appeal here points out that the Plexiglas panels caused her to fear insulting or provoking contact, but that theory was not presented to the jurors. It was very clear that the prosecutor was proceeding under the theory here that she feared bodily harm, Ms. Embree feared bodily harm, and not that she feared insulting or provoking contact. The prosecutor specifically tells the jurors on 423, the question you will answer and they will ask you to answer based on everything that you've heard and the actions of this defendant. Does it raise or rise the level of causing Ms. Rosie to have a reasonable apprehension of being injured? So just to clarify for appeal, the prosecutor was proceeding only on the basis before the jurors that she feared bodily injury and harm and these purported threats, which I'm arguing did not constitute verbal threats. Let's assume that if she wasn't, isn't it putting the cart before the horse? If we assume she wasn't injured, that she didn't fear being injured. I mean, the injury didn't happen, but the fear would come first from the action of knocking the Plexiglas separator down. I'm not sure I follow your argument, counsel. I understand your point that if the Plexiglas panel fell, that she may, even if it didn't injure, that there's a difference between it occurring while the process is falling. But I think it's also important to consider here that she described it as nothing to her in the aftermath. And so even if there is this brief moment of time while it's falling, I don't think she reasonably expected that that was going to hurt her in any way. And in fact, it didn't hurt her anyway, or that would even be insulting or provoking to her when she's describing it afterwards as nothing. And so I think that is a reasonable inference. But even if this court, even if these doubts about the state's case here does not support outright reversal in the court's opinion, I would still ask that these concerns, this court find that these concerns rise to the level of showing that it was closely balanced to permit review of arguments two and three. And I want to move on to argument two unless there's any further questions about argument one. So in argument two, the prosecutor clearly erred in bolstering his witness's credibility through the opinion of a police officer who testified that the state's witnesses provided him with consistent statements in the immediate aftermath of the altercation and that he identified Bogues as the person responsible for assault. So in this way, the prosecutor is bringing in an experienced police officer as the first witness, places him before the jurors, and have him put his stamp of approval in the state's favor on the two issues that the jurors would have to decide. First, whose version to believe, which witnesses to believe. And then second, he didn't testify. Excuse me, counsel. He didn't testify specifically with respect to who to believe. In fact, he didn't reveal the substance of the statements, only that they were consistent with one another. Go ahead. Sorry. He specifically described that he used the statements in determining who to believe. And so if he only received statements from the three states' witnesses, and then he used that to determine that Bogues is responsible for assault, he necessarily would have believed the state's witnesses. But he never testified that he believed them, right? He testified that she committed assault, and he based that on the statements he received from Ambry's, Ambry's, Naki, and Bogues, the state's witnesses. And so even if he did not say expressly, I believe these witnesses, he still said, I believe that I received information from these witnesses, and I determined that an assault occurred and that Bogues is responsible for assault, and he placed that before the jurors. Excuse me. And so it was used both for determining, as I'm arguing, both the witness credibility and for the second issue of even if you take the state's witnesses' arguments as true, whether or not that the conduct that they're describing rises to the level of constituting an assault. And I think it's clear here that the jurors would not have understood the police officer's opinion on Bogues' responsibility for assault as limited to just a past opinion of his belief, especially in the way the prosecutor attempts to combine it with an in-court identification where he's presently identifying Bogues as the person responsible for assault before them. The prosecutor's specific language here of, if that person's here in the courtroom today, could you please point out where they're sitting and identify the clothing they were in? And so by making him identify the person responsible for assault that day, I don't think the jurors would have necessarily understood this as being limited to a statement of his past opinion. But even if this court disagrees and finds that the jurors would have understood it as such and that it was limited to a statement of past belief, it's still not admissible under Eleanor Rules of Evidence 402 and 403. Wouldn't it have been admissible under the investigatory exception to show what the officer did? No, Your Honor. Why not? First, that's a very limited and narrow exception. And there is no conduct that occurs here after these witnesses are interviewed except for the fact that Bogues is charged and tried for this offense. And so there's no subsequent police conduct that's being used to describe in order to avoid confusing the jurors or fully explaining the state's case. And so in this way, it's solely being – there is no purpose that I can identify that it's being used to show any aspect of a police investigation. And so that's why I believe it's not relevant under 402. But even if this court disagrees with that point, I still believe it should be excluded under 403 because it has minimum value to somehow explain the police investigation, which, again, I'm not conceding. I don't believe it's necessary at all to explain how the police were investigating this offense. But even if it was, it should still be barred by 403 as any minimal value here would be substantially outweighed by the real danger of the jurors deferring to the opinion of an experienced police officer that the conduct that these witnesses are describing to them constitutes assault. And this is a really close case that's entirely dependent on witness credibility. And you have the officer here saying that he received these consistent statements. And the jurors did not have the full context of these statements and had to rely on his opinion that they were consistent. Well, Councilor, you just said that you believe that this was a close case, but we've got the statements of the security officer Buggs, the principal. I mean, doesn't that make this case overwhelming and not closely balanced? No, Your Honor. So it is a credibility contest here between three witnesses for the state and two witnesses for the defense. And both versions that are provided by these witnesses, there's nothing inherently incredible about them. I mean, the jury is going to have to decide this case on who they find more believable. And that's one critique I had of the state's response brief here is that it doesn't account for Buggess' testimony, which was not – and her daughter, DR – which was not – excuse me – which was not fanciful or incredible in any way. She described that the argument escalated into some yelling without any threats or movement made around the desk and without any plexiglass panels falling. And that's not incredible. It wasn't impeached with prior and consistent statements. It wasn't impeached with prior convictions. And there's also many discrepancies between the state's witnesses here in their testimony. They couldn't agree if Nucky was present, even present, or if he was where he was standing. They couldn't agree on if this actually was a normal conversation that escalated or if Buggess immediately started yelling at Embree's. They couldn't decide if it – if the yelling was about the inappropriate remark that Embree's made about DR, which is Buggess' daughter, or if it related to late check-in procedures at the school. They couldn't agree on if no panels fell, if one panel fell, or if two or more panels fell. The only thing they can agree about regarding the panels is the fact that nobody told police in the aftermath that the panels fell or that they made contact with anybody. They couldn't agree – the state's witnesses couldn't agree on if Buggess was immediately escorted out of the building or if she was with Buggs for about 30 seconds before she was escorted out of the building. They can't agree on any specific phrases or words that were used by – that could be threatening words that was used by Buggess. They only seem to agree that she yelled and moved around the office, but that's not sufficient to constitute assault as established in Argument 1. And also given that there are these – all these inconsistencies, the fact that the police officer is opining that they gave immediately after the altercation, they gave him consistent statements, it would risk that the jurors would be more likely to forgive all these inconsistencies based on the fact that they gave a prior statement to the officer. Or which the officer determined were consistent at the scene. So, counsel, if this court were to reverse and remand this case for a new trial and the defendant is found guilty again, what is the maximum sentence that the trial court could impose? I would maintain that it would be court supervision, which was imposed in this case, unless there is some – unless there is some finding of – or unless it increases based on any subsequent conduct of Ms. Buggess that occurred after sentencing, after the sentence of 30 days of court supervision was imposed. Thank you. And in your honors, just to conclude here, I'm going to rely on the briefing for Arguments 3 and 4 at this time, as I'm running out of my time here, unless there are any quick questions on that. So, to conclude, the evidence before the jurors here was insufficient to prove beyond a reasonable doubt that Anne Breeze reasonably apprehended receiving a battery from Ms. Buggess, and so this court should reverse the conviction outright. But at the least – at the very least, in the alternative, the evidence was closely balanced, and so this court should review Arguments 2 and 3 for plain error, and after doing so, reverse and remand for a new trial. Thank you, your honors. Thank you, counsel. One quick question with regard to the issue of the assessments. Are you aware or do you know that the Rock Island County Court records contained on judici.com indicate that only $208.67 of defendant's bond was applied to fines and fees, and that all assessments totaling $444 were waived? And in that sense, and with that information, doesn't that mean that the trial court did not err? And so, if that's the case, why would we – well, a separate question is why would we reach the merits, certainly, instead of remanding to the trial court, which would be required if there were an issue here of possible error, according to Supreme Court Rule 472? I know I've asked two questions with one, but the first one, are you aware of what judici.com reflects? No, I'm not, your honor. What I saw in the record was that the record that I had here on appeal was that there was still an outstanding balance, and had the circuit court applied the waiver first and then applied the bond, there wouldn't have been any money owed. And that – so I'm not aware of the specific – Yes, your honor. And do I still have time to address the second question? Go ahead. And as regards to whether or not Rule 472 applies here, I would rely on the Jones case that I identified in the reply brief, where that court determined that the application of bond money as to fines, fees, and assessment was not governed by Rule 472. All right, thank you, Mr. Wittrig. You'll have time in rebuttal. Mr. Williams, you may proceed with your argument. Thank you, your honor. My name is James Ryan Williams, and it is my privilege to represent the state before this honorable court. The defendant argues that the state failed to prove beyond reasonable doubt that the defendant committed an aggravated assault, which required proof that the defendant engaged in conduct that placed the victim in a reasonable apprehension of receiving a battery. And when viewed in the light most favorable to the state, the evidence here clearly establishes that the defendant committed assault. Upset with school staff, she entered an elementary school building, screaming and yelling profanities at the victim and others. The defendant threatened the victim, saying things like, I'll get you, come at me, come at me. The victim explained that the defendant – Well, excuse me, counsel, good morning. How do you respond to opposing counsel's point that those statements were made as she was being escorted out by the security officer? That would make a difference, wouldn't it? Yeah, with respect to the – and I will just candidly, your honor, I meant to cross that out of my prepared remarks because I was unaware that that actually happened subsequently. But nevertheless, she's screaming and yelling things like, come at me, come at me, which is, I think most people would agree, is very threatening. It's threatening language. The victim explained that the defendant here ultimately became more explosive and pushed a piece of plexiglass, which fell on her, and attempted to come around the desk before being escorted out by the building supervisor. The victim – What were the threats? Excuse me. What were the verbal threats that went along with that? We just said that opposing counsel made the point, and you conceded, that they happened, I believe, when she was being escorted out with a security officer. How would that have caused fear on her part? I believe that what counsel said, your honor, was that the I'll get you threat was made as she was being escorted out, but the come at me, come at me statement and other things that were said were made while her rather violent behavior was going on. Ultimately, though, the defendant here shoves the plexiglass, which falls on the victim, attempts to come around the desk before ultimately being physically escorted out of the building. And the victim testified that this pattern of behavior caused her to feel threatened. These facts are, as I submitted in the brief, I'm not suggesting that we actually have a battery here, but arguably being hit with, you know, or being hit with a fallen piece of plexiglass is physical contact of an insulting or provoking manner. So, you know, we're here discussing whether she reasonably feared being battered when an argument could be made that she was in fact battered. But regardless of whether she was actually battered. How do you respond, though, to counsel's argument that she didn't didn't bother enough about the plexiglass to even mention it at any point in time to the officer such that then we should not consider that as we consider the combination combination of all of these events? Well, my response to that, your honor, is we're attorneys here, justices of the appellate court. We all immediately recognize the significance of the plexiglass making contact with her, and it may have been contact over slight, but it was certainly contact that would have been insulting or provoking in nature. And so the fact that she didn't mention it, I mean, likely is just the fact that it possibly didn't seem relevant to her at the time and describing the sequence of events. I mean, again, we're looking at it Monday morning quarterbacking, realizing that the plexiglass being shoved at her and making contact her with her has significant legal or has legal significance in this case, of course. But the secretary of the school likely wouldn't recognize the significance of that particular fact. So the fact that she didn't mention it to the officer, I don't think at all establishes that it didn't happen. After all, she did testify that it happened, and I don't think that she would have perjured herself on the stand just in an effort to help get this conviction. That's just not plausible in my opinion. Like I say, I think she likely just didn't understand the significance of the fact in the same way that we all do. No one told the police officer about that. No one police officer didn't see it. And no one else testified about this plexiglass. Right. I believe that I'm sorry, told the police officer there was testimony about it, but nobody told the police officer. Right. But again, just because a particular fact of significance now was not then reported doesn't mean that it didn't happen. And again, we're viewing the evidence in the light most favorable to the state. And here we have the victim testifying that the plexiglass was shoved. So, I mean, unless we're going down a path that the victim was perjuring herself in an effort to secure a conviction here. I just don't find particular significance in the fact that that fact wasn't mentioned, you know, initially reported to the police officer. Ultimately, when viewed in the light most favorable to the state, the victim being contacted with the plexiglass that the defendant shoved in a fit of rage while screaming and yelling profanities is more than sufficient evidence. And attempting to come around the desk at the victim is more than sufficient evidence to sustain a consult, excuse me, an assault conviction. And unless there's any questions about Argument 1, I'll move on to Argument 2. The defendant argues here as a matter of first-pronged plain error that the police officer's testimony improperly bolstered that of other witnesses. As an initial matter, as just discussed, I would submit that the evidence here is not at all closely balanced, and so plain error review is not warranted. However, even if the evidence is closely balanced, the officer here did not express a personal opinion of the defendant's guilt. Rather, he was merely explaining the steps taken in the investigation and noted, quote, there was a determination of an assault that had occurred. And even if this is considered an opinion of sort, if anything, it's merely a past opinion. And while present opinions of the defendant's credibility or guilt may be improper, statements of past opinion do not constitute improper lay opinion testimony, as this court recently explained in Collins. Well, counsel, how was it not a present one when the officer, when asked if he saw the person who committed the assault in the courtroom and was asked to point the person out and also point the defendant out and did so? And also, I mean, isn't that certainly an indication to the jury that that was his opinion? And certainly he testified he arrested her. I would say a past opinion. I mean, I see what you're saying there, Your Honor. I just, I don't think that that, you know, that was the significance of that statement. He was simply trying to make an identification. I mean, that was, you know, perhaps a slip up in the phraseology, but certainly this is not any sort of concerted effort to get the officer to give a present personal opinion as the defendant's guilt. They were simply identifying the defendant. The defendant also complains of the officer's testimony, and I will just quote it. They told me about what happened between the victim and defendant, and then they told me they had to prevent her from going around the side of the desk. So basically, because he's using the word they when referring to multiple people, the defendant is complaining that the officers here is essentially testifying that the testimony was consistent. Now, to that end, I'll note that it wasn't at all offered for the truth of the matter asserted that this testimony was consistent. Essentially, the officer was just testifying to the steps in the investigation and, you know, what ultimately led to the arrest. This was hearsay testimony, was it not? And there was no limiting instruction given to the jury. But again, I don't think that this was offered for the truth of the matter asserted that they in fact, you know, that the officer was he was explaining the steps in the investigation. He wasn't he wasn't actually trying to assert that the defendant did, in fact, come around the desk. Again, he was just explaining, you know, what to the extent that this gets into the substance of it. This was this was really just a passing comment that didn't bolster the witnesses credibility. And to the extent that you could argue that it did, I mean, it's beyond harmless because the witnesses did ultimately consistently testify that the defendant attempted to come around the desk. So, to the extent that this constituted an error of sort, it was just so insignificant and most certainly could not have, you know, there's not a reasonable likelihood the defendant would have been acquitted. If only the officer hadn't mentioned in passing that they reported the defendant came around the desk again after all the witnesses did ultimately testify to that fact. Would you agree counsel that certainly courts have found that testimony from police officers can be extremely persuasive to jurors, particularly when an officer adds to that a statement that the defendant committed the crime. That may be your case. That may be the case, your honor, but at the end of the day, this was a forfeited issue was not raised below. This evidence is not at all closely balanced. We clearly have an assault that occurred here. And so it's ultimately the state's opinion that plain error review is just not warranted, nor is addressing this issue as a matter of an effective assistance counsel. Are there any other questions on argument 2? If not, I'll move on to argument 3. The defendant finally argues as also as a matter of plain error that the state effectively, not actually, but effectively minimize its burden of proof through the cumulative effect of 3 alleged errors. The 1st of these is an argument that the state misdefined assault during. Now, what was happening here again, we're involved here. They're talking very generally trying to differentiate between the basic concepts of assault and battery in the state said, quote, assault means really intentionally placing someone in the fear that they will be injured or subject to a battery. So, the problem here is that the state omitted the word that the fear must be reasonable. This most inconsequential omission did not minimize the state's burden of proof. The state immediately follow that statement with an explanation that the court would provide the jury with instructions. And the court ultimately did at the end of the trial, long after Vaudeer accurately instruct the jury so that the fear must be reasonable. The defendant argues also that the state minimizes burden of proof by misleading the jurors by stating and opening and closing arguments essentially that this case was about civility. Now, personally, I don't really understand how this even arguably minimizes the burden of proof, but to the extent that it did trial counsel immediately responded to that statement by arguing that the case was not about civility. And that the defendant could be found to have had uncivil behavior without finding that she committed an assault. The defendant raises a similar argument complaint about the closing argument statement where the state said this case was a question of civility. The state was, again here, merely referencing the fact that defendant, you know, that this case arose out of the defendant's uncivil behavior before explaining that the quote main question was whether the defendant committed assault. And ultimately describing an assault as uncivil behavior does not mean that uncivil behavior constitutes an assault. And then finally, the defendant complains that the state minimizes burden of proof by arguing that the charge or by effectively arguing that the charge itself was substantive evidence of guilt. When the state said the incident here was serious to the point police were called. We're here today, right? Well, how is that not improper? The officer's office offering, I'm sorry, the prosecutor is commenting on the defendant's conduct and calling that to the attention of the jury. Ultimately, this is a comment that's directed at the seriousness of the offense, which is not at all in an element of assault. It was an accurate observation that the defendant's conduct here was serious and it did result in police intervention and criminal charges. But the fact that her conduct was serious doesn't establish her guilt and the state didn't suggest that the fact that her conduct was serious established her guilt. To the contrary, the state explained that the question before the jury was whether the defendant's conduct quote rose to the level of causing the victim to reasonably apprehend being injured. So, unless this court has any further questions. Well, I would ask the question I asked opposing counsel with respect to judici.com and the assessments and the bond information. Are you aware of what that shows? No, your honor. I did not. I did not check. Did you? No, I'm sorry. Okay. So, if those records are correct, there really wouldn't be any need to remand this issue. Correct? I don't think so. Your honor. Unless there are any other questions. I don't see any other questions. The state would ask that this honorable court affirm the convictions. Thank you all for your time. All right. Thank you. Mr. Williams. Mr. Whitrick rebuttal argument. Thank you. Your honor starting 1st, the state suggests that the. I'm going to jump around here a little bit, but that the, that the state's witnesses wouldn't have any motive to. To exaggerate bogus conduct, but that's not entirely true here where the prosecutor even agrees that. Ambrose made an inappropriate remark about in front of the prior day. And so the state's witnesses would have motivation to blame for what occurred during that altercation in order to distract from the fact that the school secretary. Is making inappropriate remarks about bogus daughter and to diminish their, their, their own. Their own inappropriate behavior in that circumstance. And so, so there is motivation here for the state's witnesses to blame. Would you mind repeating what you just said? I didn't follow it and it's an important point. Yes, your honor. So, to provide a little context, the Nucky said that the prior. The prior day inappropriate remark about DR's daughter in front of DR and DR reported that to bogus. And so embreeze would be motivated here. When bogus is coming into the office and demanding to talk about this potential issue. To blame her for her conduct in order to minimize her own misconduct and making this inappropriate remark and the, the other witnesses. Who are also who were employed by the school and who I'm assuming that the principal is, is our supervisor would be motivated to protect her and and and to to agree with what her, her. Charges or her allegation is. And then I also want to quickly jump to. Council, if I may just quickly for a point of clarification from your statement earlier and in response, the, the statement that she was going to get her. I believe your statement and argument earlier was that that phrase, or that statement was made. After she is being escorted out, if you will, by Mr. But the, the statement where she challenged Rosie to come at me, you were not suggesting that that was on the way out. That was during this course of events as she's working her way around the desk. Correct. I agree. Your honor. And I apologize. I just wanted to clarify that those are 2 different statements based on the evidence that the timing appeared to be different according to the. Thank you. Yes. And then I also want to briefly point out here that the, the, the, the states claim that these, the prior consistent statements were just in passing, or they had no consequence here. Is contradicted by the fact that prosecutor is referencing them and closing argument after talking about the. The evidence that they have to support a finding of guilt on page 416, they continue on and say. We saw the footage, or at least the initial office area, the individuals that he interviewed office to tell us their statements were consistent in regards to the specific incident with this focus. In relation to what happened with Rosie, they remain consistent. In his estimation, and so the prosecutors specifically here referencing. Is his personal opinion in the present tense to the jurors. During closing argument, and so, so to argue that this was. That these statements, both the Parkinson's statements, and his opinions would have been understood by the jurors to just be limited. In the past, I don't think it's accurate given the way the prosecutors using them in any closing argument as well. And and also there was, I believe the court pointed this out that there was no limiting instruction here for the jurors on how to. Consider the, this, this testimony, and so they would have been. For you to defer to the police officers evaluation, both that was responsible for. Assault as well as the fact that these witnesses. Gave prior statements, so perhaps they should excuse any, the many inconsistencies that occur later in their testimony and their trial testimony. And unless there are any other questions. Thank you honors for your time. All right. Thank you. Mr. Thank you. Mr. Williams. The case will be taken under advisement and the court will issue a written decision.